Yes, good afternoon, Your Honor. Carlos Salim for the plaintiffs and the counts, please report. The district court in this particular case has decided to abstain under younger, and that is the extent it's holding. The younger issue, I believe, is quite easily resolved. In the first instance, it's clear, as the medics are trying to make clear, that we've received no prospective relief. We've simply received – I mean, we've received no retroactive relief or any other kind of relief. We've received only prospective relief. That would be in the form of some sort of an order barring defendants from further arrests and prosecuting further members of the proposed plaintiff's class. The arrests are for what exactly? Just so I can make sure I understand. This is for moving from any place within Maricopa County to a different place within Maricopa County? Is it for starting outside of the county and moving inside? What kind of arrests are these? The statute they're prosecuting under is the general state conspiracy statute. It's requiring that you transport oneself through Maricopa County. Most of these individuals are being transported through Maricopa County. In fact, all of them at the time of arresting. And the idea is that since they have paid for transport, if they concede to that and have been unlawfully or entered the United States without authorization, then they are deemed guilty. I'm trying to understand. Is this transport that involves having crossed the border and coming to the United States so that they're in a truck being transported? Or is it transport in the sense that I buy a bus token and get on a bus and get myself transported from one? Well, there is a sign for elements of that, so it wouldn't involve buying a bus token. But if one pays for transportation through Maricopa County and the... Well, I'm sorry, when you buy a bus token, you are paying for transportation, literally. But the perpetrator needs to understand that the individual being transported is not present in the United States law. I see, I see. So the kind of transportation this is limited to has to do with some sort of unlawful transportation. What's the code we call smuggling? Okay. So I am just wondering if you're not talking about past offenses. Are you clients saying they plan to commit illegal activities in the future? Not only are they illegal under this law, which I understand you can challenge and, you know, we can consider constitutionality, but those activities are also illegal under federal law. So can we presume that your clients are going to be... I mean, to do this, they are now in the United States. They would have to leave the country. That would not be a requirement, as I read the statute. It's simply you are here without authorization. You can pay for transportation. Whether or not you have recently left the country or re-entered it is irrelevant. Well, that's why I was asking what it means, what kind of activities are being prosecuted for. So if you get a taxi driver who happens to know you're here illegally, that people are being arrested for that kind of violation of the statute? I can't say that I know of circumstances like that. Well, but you're asking for an injunction, so we do have to know what you have in mind. What is a set of circumstances from which, you know, your clients have to show some likelihood of being prosecuted again? And so you have to tell us what kind of circumstances. As best I can tell from your answers, although it's been a little bit like pulling teeth, is that they would have to be essentially... I mean, based on past prosecutions, they would have to be involved in being smuggled into the United States. The kind of things they get arrested for, it sounds to me like, is they are being found in a truck, and they have just come across the border, and they are then being prosecuted under state law for that activity. Now, if that's the core, or that is the kind of thing from which they are likely to be prosecuted, they have to then, in order to be prosecuted again, being that they are now in the country, they have to leave the country and then propose to engage in activity that violates federal law by buying a fare with a coyote or, you know, some organization that will run them across the border. Is that the circumstance you're talking about? I think in most cases, Your Honor, that's the sort of circumstances in which they would be prosecuted. I do not believe... Well, what likelihood is it that these folks will, in fact, leave the... I mean, many are here, once they're here illegally, they stay for years and years and years and never leave, but they have to volitionally, I mean, or either have to be deported or they have to cross the border back out, and then they have to willfully buy a fare by proposing to violate federal law. Can we presume that both of those things will be present as to your clients? I don't believe that there is any such requirement of exit and re-entry. Well, I'm sorry. Why don't you persuade me? That is not the case of the named criminals in this litigation. If they never leave the country again, can they be prosecuted under this law? There's nothing to stop them. Can they? Will they? Is it likely? Is there a single instance where somebody has been prosecuted under this law except when they were just coming across the border in a truck full of illegals? I'm not aware of all the cases that have been litigated. Are you aware of any case where somebody has been arrested and prosecuted under this law other than when they were in a... I mean, I'm just taking what you told me. I do not know. Okay, so every instance we know about involves people who have crossed the border. They have to start out in a different country, probably Mexico, and cross the border. So you have to establish that your clients will be in a position, if they have a... They will not be prosecuted by just walking around Phoenix, right? They have to take the transportation. Even if they get a cab fare, they will not be prosecuted. Someone who knows they are not walking the United States. Those are the elements. You know, I feel like this is who's on first. You didn't cite this case, Roe v. Wade, but there's actually a standing, a younger issue in it. I don't know if you're familiar with it, but there the doctor was being prosecuted in state court, and he tried to avoid younger abstention by saying that he wasn't, didn't want to litigate his present status as a defendant, but he was only concerned about his status as a potential future defendant because he would continue with the activity. And the Supreme Court would have nothing in it. They said there's no merit in that distinction. Is that distinguishable from our case? Aren't the Mexican nationals saying, well, don't think about our current case pending in state court. Think about some possible, however hypothetical future case there might be. And that seems to fall within what the Supreme Court said. There's no merit in that distinction. I'm not familiar with that distinction, Your Honor, and how people address it in some sort of follow-up. I do believe, though, that in the situation we're talking about... Well, the case is Wooley v. Maynard, isn't it? You know, the case you're relying on. I know a great deal about that case. Wooley v. Maynard is a guy who covers up his license plate. He gets prosecuted because he covers, in God, live free or die. I knew a lot, but I forgot. Live free or die. And he says, look, I've got my tickets. I paid the tickets. And my fear is I'm going to be running around New Hampshire, and the sheriff will stop me again because I still have live free or die. And the Supreme Court looked at it and said, well, you know, it's very likely. You go around covering up the license plate. The sheriff has said that that is illegal. And we will stop you. You know, you'll get stopped again and again. I think he was prosecuted two or three times in a row. But I guess I'm having trouble figuring out how your clients are in the same position. They can walk around, from what you've told me, they can walk around Phoenix for years or drive or go with taxi cabs or anything else around town for years and never be in any danger of being prosecuted. I think one of the things that we're talking about is that we're talking about two different concepts. One is the abstention issue and the other is standing or promotions, as the case may be. But the way abstention works is you're saying, look, you don't have to worry about past conduct. Okay, so anything that happened in the past doesn't count. You now have to look at future conduct. So the fact that they were once transported into the country no longer matters. It's a non-fact for our case. Well, but the problem is the thing you are seeking relief for, you have to show standing and likeness and things of that sort. So that's what it boils down to. Is there a likelihood that they will again be prosecuted subject to the same type of on-off activity? I would cite the report to Armstrong v. Davis in which this Court dealt with that issue and basically held that if there is a policy that provides for this type of thing, the type of action that is taken against the plaintiffs initially, then there's an implicit presumption that it will happen again. It satisfies the law, and it's a sufficient amount of vulnerability to forensic status. But don't they have to commit a new violation in order to be prosecuted? In this particular case, no. What they were asking for, in Armstrong they were. These were parolees, and for them to be subjected to the same procedures again, they would have to then commit some kind of crime and be thrown in jail, and at the end go through a parole period. So this very situation was dealt with in Armstrong. But regardless of whether these individual plaintiffs continue to have violent claims, we have a number of organizations and taxpayers who support standing plaintiffs regardless. Well, could you address the abstention issue first? Because the district court never reached the standing issue, and I guess my second question would be, should we reach the standing if we determine that the district court erred in determining that younger abstention was appropriate as to the organizational plaintiffs and the taxpayers? I think we have to. Obviously, the court has power, and I think the responsibility is to reach the standing issue, to respond to it even if it's not right. The district court didn't deal with it in the footnote in its earlier decision, which said there is an involved abstention because of the organizations and taxpayers. But that was done in the footnote. It's not part of the holding. The district court specifically said it was going to deal with abstention and not reach the standing issue. Abstention, I think, as I was saying, I think is a fairly easy decision. Whether or not there is the claims of the main plaintiffs on moot for seeking prospective relief, the complaint is quite clear that that's all they're seeking. And if that's all they're seeking, then abstention is not appropriate. It may be that their claims are moot, but abstention is not appropriate. The district court also erred in abstaining from hearing the claims of those individual plaintiffs and the organizations who are not prosecuted, that they're never proceeding against them. We assert that they have a fair organizational standing, representative standing, and we assert that the taxpayers have municipal standing to challenge the diversion of municipal funds towards this program. So the district court thought the organizational plaintiffs and the taxpayers, that their claims were too wrapped up with the Mexican nationals and would effectively act as an injunction on the State court proceeding. That is correct, Your Honor. That is correct. That's really the question. Is or are the claims of the organizational plaintiffs and the taxpayers so intertwined with those of the main plaintiffs that if you have to abstain with respect to the main plaintiffs, you have to abstain with respect to everybody? As I've said, we don't believe that abstention is appropriate with respect to the main plaintiffs. It may be that their claims are moot, but abstention is not appropriate. And we also intend that these claims are not so intertwined. Basically, all the district court was saying is that, look, if I issue a judgment or an injunction in your favor, in favor of the organizations and in favor of the taxpayers, then that is going to create some sort of conflict, an inevitable conflict with the State courts, and I just don't want to get involved in that. That is not what being sufficiently intertwined means, according to the cases that I understand. And we refer to the court to those cases where the courts have held again and again, look, just because you're going to set up a potential disagreement between the State court and the Federal court does not call for abstention. That's not sufficiently defined. You have to have ownership controls under the foreign package. Now, if it turns out that you – there's no standing or abstention or whatever as to the individual plaintiffs, are the claims of the – of the institutional plaintiffs independent? Yes. And they stand without – so you don't need an actual – an actual person who's going to be prosecuting this law. That's right. Why isn't that taxpayer standing, which we know doesn't – doesn't exist? It doesn't exist on a Federal level, and on a State level either, but on a municipal level, as the authorities require. But you're a Federal court. It's a Federal court, but they – You're bringing – we're bringing Federal claims. That's right. And so you have to have Federal standing, and we have been told by the Supreme Court there is no taxpayer standing for most claims unless – there's no religious claim here, right? There's no establishment claim. There is a – there is a preemption claim, Federal preemption claim. And – and the authorities are quite clear that when plaintiffs – municipal standing, that there is Federal – Well, that's why I'm asking about the evidence and whether we would need to remand. Assuming we agreed that the district court ordered with younger abstention with respect to, say, the organizational plaintiffs, the municipal taxpayer standing seems to involve issues of was there a dollars and cents pocketbook injury. And I don't – it seems to me that that requires some evidentiary hearing, which the district court didn't have. So how could we decide that up here? Wouldn't we have to remand that issue? Well, the standard at the point of a motion to dismiss basically is basically you look at the pleadings, and the authorities are that as long as there's an allegation of municipal taxes having been murdered, it's clearly a measurable amount. It goes up every day because they continue to enforce these – these statutes. But – but the amount is certainly discernible. There's a cost per day for someone in jail or arrested for booking, et cetera. That kind of evidence could easily be reproduced. Well, how do we know that they're not saving for every guy that got in jail? They're not saving on other kinds of services. So this is actually a net profit to the municipality. Well – How do we know that's not the case? You know, they don't draw welfare. They don't use certain city services. They – they – I mean, who knows? There's a whole variety of things that – that – So you're saying they – they – well, the – I think the short answer to that is there needs to be an evidentiary hearing. It depends – it's not a gas lamp. It depends if they'd like to raise this. You know, I think that, you know, they're entitled to put on their evidence, and we should be able to put on – we should be entitled to put on ours. But it's not something – at least in the case of the state. What do you rely on for standing for the municipality as – based on the expenditure of money? What case do you rely on? Aiden's Realty Corp. vs. Coleman, 455 U.S. 363. The allegation there was no one was detailed in what we had in our department. I can quote it. My name has been frustrated by the tennis concept. I'm sorry. Yeah, that's a frustration case. It's not a money, dollars, and cents case. And we can talk about frustration in a minute. But what dollars and cents case do you have? It was my impression that taxpayers just can't come in and complain about the fact that the government is spending money on things unless it is establishment of religion. There's just no standing. Otherwise, we'd have people in here all the time arguing about whether or not the war in Iraq is being properly fought or whether they're spending too much money on defense budget as opposed to spending more money for health care or whatever. We'd have government by the judiciary. You say that, but what case do you rely on? Nothing by me. I believe Brockingham himself would rely on me. So I guess in Barnes-Wallace we said that the taxpayer must demonstrate that the challenge activity is supported by a separate tax or paid for from a particular appropriation, or it adds some to the cost of municipal activity. So is that alleged in the complaint? The allegations of the complaint. Okay. I don't know if it's necessary for us to decide that right now. I would compare the allegations of our complaint with that of the truth and hate that's really horrible. And so the allegations, I think, are quite sufficient. If they are not, then we would obviously request an opportunity to amend the complaint and make them sufficient. It was clear we were trying to see that there is an expenditure of public funds for this, whether there is a net loss or a net savings. Okay, thank you. We'll hear from the other side. May it please the court, counsel. I'd like to reserve five minutes for my co-counsel, Mr. Wilenscheck. My name is Tim Casey. I represent the defendant, Appalese, in this case, Maricopa County, the entity itself, the Board of Supervisors, which is the governing body or the legislative body for the county, the elected Maricopa County attorney, Andrew Thomas, and the elected Maricopa County Sheriff himself, Joseph M. Arpaio. Your Honors, this case that's before you is not asking you to hold unconstitutional or rule in any regards regarding Arizona's human smuggling statute. What this court is being asked to do is to reverse the district court's decision under Younger to abstain from addressing whether or not it's appropriate to apply Arizona's conspiracy statute to the human smuggling law. But let me ask you about the organizational plaintiffs and the taxpayers. When I read Doran and then our decision in Green, it seemed that, provided that the organizational plaintiffs and taxpayers were not themselves parties in the state court, which they're not, and they don't have the sort of relationship of the owners and employees of the same adult bookstore as in Hicks, that under the rule in Doran then they didn't have the sort of relationship that would require abstention. So how do I then agree with you that the district court was right in abstaining with respect to the organizational plaintiffs and the taxpayers? Well, the district court, as you know from reading the opinions, found that the taxpayers' claims, along with the six Mexican national claims, were inextricably interconnected or related. And if you look through some of the factors, they said the interests are sufficiently intertwined or interwound that you cannot grant their requested relief without necessarily interfering or truncating a state criminal proceeding. But didn't the court say that was okay in Doran? I mean, obviously the two corporations who didn't have the topless servers, if there was a ruling on their constitutional rights, was going to affect the state case against the bar with the topless servers. Here's the distinction, Your Honor. The distinction in this case is we have a proposed class action. And even if you have the taxpayers remaining, you will see in the first amended complaint that even the taxpayers proposed to be class representatives, which means that anyone out there that is currently being charged with that conspiracy to human smuggle, that they have the ability then to effectuate that, basically, that invalidation if the district court were to rule that. And that would directly interfere with the pending criminal action, which, by the way, the Younger decision is precisely on point. That's the reason for the Younger doctrine is not to be involved in interfering with pending state criminal matters. Can you explain to me how that would work? So say the organizational plaintiffs went forward. Yes. And they had standing. Yes. And so they bring their claim against the Arizona statute, and the court says, you know, the Arizona statute is preempted, or whatever the decision is. I guess my question is, why is that any different, regardless of whether it's a class action in State court, why is that any different than the situation in Duran? Because in this case, what it will do is effectively stop every arrest and every prosecution that is being made under the human smuggling statute in the State of Arizona, and whenever the prosecutor decides, like prosecutors throughout the Federal system in any State, in the 50 States of the Union, decide to apply the conspiracy statute, it will stop it in its track. And Younger says no. And that's why the question is different. Well, I didn't see a case where, you know, so long as the parties were separate, it didn't seem to matter what the effect was going to be on the State court. I mean, so for example, in the other was another Hindu-something case. The Hindu temple. Yeah, where the parties, the same parties, the same group of people. Whereas here, the organizational plaintiffs seem to be very different than the Mexican nationality, completely differently situated. And if I understand the question, I think I do, Your Honor. The big distinction is that in those cases, and I heard your comment earlier about what difference does it make on the effect, but the effect is so important here, because when you have a class action and there is the equitable relief that the plaintiffs want, you stop criminal proceedings in their tracks. In Hindu temple, in these other cases, you have a ruling for equitable relief for something that is prospective in the future. It has no bearing on any pending criminal matter. And that's the key distinction. But Duran, it surely did, didn't it? I'm sorry? In Duran, didn't it have an effect on the State proceeding going against the bar that did go ahead with their topless entertainment? I don't – I'm sorry to say I don't remember the facts sufficiently to address that, Your Honor. In this case, the court properly determined that it was, and it had no discretion in order to abstain because it would necessarily interfere. And it listed in a very detailed, methodical, well-reasoned fashion those reasons that the taxpayer plaintiffs, the organizational plaintiffs were so intertwined with the five or, excuse me, the six Mexican nationals. You'd feel the same way if the case had not been brought. Let's say the Mexican nationals weren't in the case at all. They've never been brought, they're not client, they don't exist. And this case has just been brought by the municipal – by the institutional plaintiffs. Would you be making the same argument? I would be making the same argument because you still have, Your Honor, I respectfully submit, the same problem with the institutional plaintiffs and the organizational plaintiffs, so long as they're serving as class representatives of people that are arrested and charged and prosecuted under both human smuggling and the conspiracy to commit human smuggling statute. I believe that that is the – that is why it implicates and directly interferes with the proceeding. They can't be class representatives for those people. By taking out the individual plaintiffs, individual can be class representative for people like them. But organizations can't be class representatives for individuals. That's my understanding as well. I'm just reciting to you the allegations of the plaintiffs. So take the individuals and the class of individuals. Anything to do with flesh-and-blood people out of the case? I believe that you – I believe that's a much closer call. If, in fact, you just have the organizations there, but the problem still is, is the effect it's going to have on pending litigation. But isn't that true for any claim – any constitutional claim against a criminal statute? Say there's criminal statutes unconstitutional. Well, of course it's going to affect any pending criminal cases. Are you saying you could never bring that sort of claim? No. No, absolutely. But the law provides the remedy for judicial review being in the same court proceedings. In this case, it would be under Arizona state court proceedings. That's what Younger envisions when you have a criminal process. Not to go off into a court of limited jurisdiction, such as our Article III courts and district court, and have them determine what should be the rulings in a particular or have the – what should be the ruling on a particular issue that will directly or indirectly affect a pending criminal matter. So, Your Honor, the court ought to affirm the district court's rulings. It properly determined that abstention was appropriate. It determined that there were ongoing state judicial proceedings that would be adversely affected. They determined that the – there were important state interests. The plaintiff makes the claim that the important state interest was – should be something more than simply enforcing the state law. But if you look at – and I may be mispronouncing the decision, but it's the Arizona Court of Appeals decision. It's a state court decision, the Baronga matter, Baronga-Sierra. It clearly addresses that the Arizona Human Smuggling Statute was addressed to try to remedy the lawlessness that we see in our State that stems from and arises from the problem of human smuggling. Those problems are kidnapping, extortion, identity theft, robbery, a whole host of things. So what's your – help me out with what exactly – so what is the kind of cases that are brought under the statute? I'm sorry? What are the kind of factual situations that were – prosecutions actually brought under the statute? My understanding, Your Honor, is usually what you have is you have maybe a load vehicle, which can be any type of passenger car or truck that's carrying multiple individuals, where a person has charged other people who happen to be in the country illegally, and they know – the person driving knows that, and they charge them for transportation. Transportation from what, the church? No, usually it's from one destination to another. It's not like a cab fare or a bus ticket. It's people who the coyote, using the vernacular, are the ones that typically know that they are being hired to smuggle someone from point A to point B for compensation. You're talking about crossing the border, right? This is sort of the unspoken thing. Well, in Maricopa – I'm trying to understand what – Sure. Well, Maricopa County – You said from one point to another. I don't know – We're not – Maricopa County – This could be from home to the shopping center. It could, yes, but typically it's transversing. Typically, my understanding is it's transversing Maricopa County. Maricopa County is about two and a half to three hours north of the border with the Republic of Mexico, so typically you have several interstates, several highways that go through the county. If a load vehicle is identified, it's pulled over and you find out that you have someone that's being paid to smuggle. Typically, the coyote, the smuggler is charged, and typically the conspiracy law is also used to charge the smugglees, the people who paid to be smuggled. What makes it smuggling? I mean, I'm – you know, you are – Yes, sir. What is – Let me – Who is your opposing counsel in this? Well, you – yes, I brought up, because, Your Honor, you brought that, but under the statute, Arizona's Human Smuggling Statute 13-2319, Section 3, says smuggling of human beings means the transportation, procurement of transportation, or use of property or real property by a person or an entity that knows or has reason to know that the person or persons transported or to be transported are not United States citizens, permanent resident aliens, or persons otherwise lawfully in this state. So stop right there for a second. Yes. So if somebody knows that a person who has been living in the country for 10 years but who is here as an undocumented person and he takes that person from home to church, as Judge Kuczynski was indicating, does that constitute smuggling of human beings technically under that definition? I have not ever heard of a case like that, because typically you're talking about smuggling corridors where you're moving people from Mexico to other parts of the United States. I've not heard. Yes, sir. You wanted to say something. Oh, thank you. I'm sorry. It was your colleague. Thank you. I still haven't gotten an answer to the question. I don't know why it's so difficult to get an answer to this question. I apologize. I mean, what's involved? What makes something a smuggling case if typically it's not taking somebody to church? What does that mean? I will tell you from my understanding, Your Honor, if I pay you to go drive me back to Phoenix and I'm in the country unlawfully, you and I both can be charged under the statute, you for being the coyote, me for conspiring. You're saying from San Francisco to Phoenix, isn't that? Yes. If I'm in the country unlawfully and you know that I'm here unlawfully and you know that I'm paying you to transport me to a new location, that is my understanding. But it's just that. How is that different from taking you to church? Let's say you say, you know, that was very nice driving you did, taking me from Phoenix to San Francisco to Phoenix. How about for a lesser fee, you pick me up Sunday morning and take me to church? And you're still illegal. I still know it. Yeah. I'm not aware of any prosecutions that are being brought that way. Usually you're talking about load vehicles with multiple people, but not simple transportation from, say, a residence to a church, for example. But you didn't say anything about load or anything else. You said if you pay me to take you from San Francisco to Phoenix. You didn't say it was anybody else coming along. You didn't say it was a truck. You didn't say there were similarly situated people. You didn't say any of that stuff. You said if you pay me to take you. So what's different about taking you from San Francisco to Phoenix and taking you from home to church? I don't see it. I personally don't see a distinction. I could just share with you. So both could be prosecuted. Both could be, but I could tell you that the example of going from one residence to a church is not what we see in Arizona as being prosecuted. Could it be? Yes, I suppose it could be. But that's not what we see. Thank you, Your Honor. So what do you see? What is it that you see? What we see are vehicles traveling on Interstate 17 and Interstate 10 that are usually vans or larger vehicles with truck that usually have a whole host of people that have somehow been smuggled in the United States, gotten into the vehicle, have paid the driver to drive them to Los Angeles, anywhere else in the state of California, Nevada, Chicago, Texas, and that's what we typically see. Okay. Thank you, Your Honor. We'll give you a couple of minutes. Dennis Wolnicek, Your Honor. I'm not sure what the issue is, but in the short time I have, I'd like to see if I can try to clarify it. The reality is that the only thing that's at issue here, Your Honor, is the application of the conspiracy or solicitation statute to other statutes which have been found, at least by the State, to be constitutional, referencing the Berrigan case. That prosecutorial discretion, if you will, in utilizing a conspiracy statute is really what we're here about, not the constitutionality of the underlying statutes. And that prosecutorial discretion is used daily, both in the Federal and State courts, by prosecutors. I think the key to this thing is that, you know, the Federal court really felt under Younger that there's no reason for it to interfere in any of those State criminal prosecutions utilizing a conspiracy statute. And that's really all that's at issue here when you get right back down to it. So. Let's say that we disagreed with you on the — that Younger abstention was appropriate maybe as to one or more of the plaintiffs. What do we do then? The district court didn't rule on standing. It didn't rule on Rooker-Feldman. It didn't rule on any of the other threshold issues. Do we need to send it back to the district court to look at those issues? Well. Or should we decide them here? My opinion is that Younger answers all of these questions if you just look at it. I mean, Younger answers all of the issues relating to standing. Right. But let's say we disagree with you. Well, it's not me. That's what I'm saying. I'm looking at Younger, and Younger talks about, quote. You have very limited time, and if you're not going to listen to the question and answer it, you might as well sit down. I beg your pardon, Your Honor. I thought I was listening to the question and I was trying to answer it. I don't think you were. You were going to ask the question twice. Assume you're going to lose on that point, that we disagree with you about Younger. Don't argue about it. Don't say disagree with you or disagree with anybody else. Just take it as a given. Do we then decide the other issues or do we re-amend? Well, I was trying to answer that I think you can rule as a matter of law on the issue. That was what I was trying to answer. It's not a question of agreeing with me. You should go back and listen to the recording. So what is your answer? I think I just answered, Your Honor, that I believe that the Court should rule as a matter of law on the issue and not re-amend it. Which issue? On the issue that Judge Ikuda asked me about, about whether or not it would be re-amend on standing issues and other issues that she said the Court did not directly address, which I think was the question, wasn't it? So what I'm saying is I believe that the Court should rule based on the law, as in Younger, on the issue of the non-parties, on the issue of the standing of the non-parties, on the issue of the municipal liability, on the issue of whether or not there's a dollar and cents effect as it relates to standing, and on the issue based on Green and Gilbertson and those cases that deal with those issues, and also on the issue that was raised relating to the Armstrong case, relating to standing as well, Your Honor. And that was my answer. I don't think there's any basis to remand it for any evidentiary hearings because the complainant has been very specific thus far about what his position in this case is. It's in his pleadings. And his pleadings are being judged as to whether or not they raise any issue as to whether or not the Federal court should enjoin the State court proceedings. All the facts are there. I think the Court has those facts in front of it and, with the law, can apply the law to those facts. I don't think there's any evidentiary issues that really need to be addressed. In fact, to the contrary, I think the district court did rule on standing, but probably ruled against us. But I think the Court was wrong in that. The Court didn't find that to be necessary to its ultimate decision. But we have contended that there is no standing based upon the fact that, quickly, with respect to the D.C. Common Cause case, there was a specific expenditure in that case of public funds, a measurable appropriation that was at issue. And it was very distinct. It wasn't this thing that the Court – you know, you said, Judge Kuczynski, about do we determine whether or not, you know, there's a benefit or not a benefit. That case, the facts were very distinct and the allegation was very distinct. Here we have, you know, a miasma of issues that could be addressed. But the reality is we don't get there because they don't have standing to address them. All of those non-parties, even under the language of Younger, although they may feel inhibited, they may feel it affects them, that allegation, even if true, is not sufficient to bring the equitable jurisdiction of the Federal courts into play to enjoin a pending State prosecution or the application of conspiracy statutes to the human smuggling statute. Thank you. Thank you. I think you have a little time left. I have a – just very briefly, Your Honors. I found that during the – my time at the counsel table here, the citation that Judge Kuczynski, you were asking about municipal taxpayer standing, that would be CAMAC v. YV, 932, Fed. 2nd, 765 at 770, 9th Circuit, 1991. What that case says is municipal taxpayer standing simply requires, this is all a quote, the injury of an allegedly improper expenditure of municipal funds. Other than that, I would only add that as far as interfering with ongoing proceedings, I don't see how a simple injunction preventing further arrests. Wasn't that an establishment case? This was a Good Friday case. CAMAC was a Good Friday case. Yes. So it follows it's an establishment case. It was an exception, taxpayer standing for establishment cases. You're going to have to find something better. Okay. Good Friday, you know. I will advise a court of citations. CAMAC hurts you. Okay. I have nothing further to add. Thank you. Okay. Thank you. The case is arguably submitted. We're adjourned. All rise.
judges: Kozinski, Goodwin, Ikuta